## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK TODD McCLELLAN<br>a/k/a Frank Neeszy,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | )<br>)<br>)<br>)<br>)  2:04cv1791<br>)  2:03cr5<br>)<br>)<br>) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND ORDER OF COURT

Before the Court for disposition is a PETITION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY ("Petition") filed by Frank Todd McClellan (*Crim. Doc. No. 48*). The matter has been fully briefed. *See* GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FILED PURSUANT TO 28 U.S.C. § 2255 ("Response") (*Crim. Doc. No. 50*) and PETITIONER'S BRIEF IN SUPPORT OF PETITION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 ("Brief") (*Crim. Doc. No. 67*).

The Court conducted an evidentiary hearing on the Petition on June 27, 2005. Petitioner Frank Todd McClellan ("McClellan") was represented by James W. Krause, Esquire at the hearing. McClellan and Thomas Patton, Assistant Federal Public Defender ("Mr. Patton"), testified at the hearing. No other witnesses testified.

The central issues at the hearing were whether Mr. Patton, who represented McClellan after he entered a plea of guilty and during the sentencing phase of the underlying criminal proceeding, rendered ineffective assistance of counsel due to his alleged failure to: 1) adequately prepare for the sentencing hearing, 2) challenge the application of the career offender guideline, 3) argue in favor of a downward departure from the career offender guideline, and 4) file a notice of appeal after the sentencing hearing, contrary to the constitutional protections afforded by *Strickland v. Washington*, 466 U.S. 668 (1984) and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

The testimony from the § 2255 hearing has been transcribed. The Court will discuss primarily those basic facts which are relevant to the subject motion. Based on the testimony and evidence presented at the hearing and the applicable law, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On January 8, 2003, a Grand Jury returned an Indictment which charged McClellan with five counts of possession with intent to distribute and distribution of heroin, in violation of Title 21, United States Code, section 841(a)(1) and 841(b)(1)(C). McClellan pled not guilty to the charges and was detained at the Allegheny County Jail.

2. McClellan was initially represented by Crystina M. Kowalczyk, Assistant Federal Public Defender ("Ms. Kowalczyk"), but later privately retained the services of Attorney Warner Mariani ("Attorney Mariani"). On May 7, 2003, while represented by Attorney Mariani, McClellan pled guilty to Count Two of the Indictment pursuant to a written plea agreement. The plea agreement did not require McClellan to waive his appellate or section 2255 rights.

3. Shortly thereafter, the relationship between McClellan and Attorney Mariani deteriorated, and Attorney Mariani sought to withdraw his appearance. On May 29, 2003, the Court permitted Attorney Mariani to withdraw his appearance and appointed the Federal Public Defender to represent McClellan. The Federal Public Defender assigned Mr. Patton[1] to represent McClellan. Mr. Patton works primarily out of the Erie branch office of the Federal Public Defender's Office, and was required to travel to Pittsburgh to meet with McClellan. Hrg. Tr. at 6.

4. On or about May 27, 2003, McClellan, acting *pro se*, sent two letters to the Court in which he expressed, *inter alia*, his desire to withdraw his plea of guilty. *See Crim. Doc. No. 29*. On October 23, 2003, the Court conducted a status conference with the attorneys regarding

---

[1] Mr. Patton has considerable experience as a criminal defense attorney in the federal system. Hrg. Tr. at 35. Mr. Patton has nine years of experience as an Assistant Federal Public Defender, one year of experience as a private criminal defense attorney, and clerked for a federal district court judge in Springfield, Illinois. *Id.*

McClellan's letters.[2]  The Court held a second status conference with counsel and Mr. McClellan on November 14, 2003.  At the second status conference McClellan represented on the record that based on the advice of counsel[3] he did not wish to withdraw his guilty plea, that he wished to proceed with the sentencing hearing as scheduled, and that he was satisfied with Mr. Patton's representation.  *See Crim. Doc. No. 63* at 15-16.  An apparent primary consideration in McClellan's decision not to seek to withdraw his guilty plea was the government's discretion to file an "Information to establish prior conviction" pursuant to Title 21, United States Code, section 851.  *See* Hrg. Tr. at 12-13.  If convicted, the pre-trial filing of said Information would have substantially increased McClellan's potential sentence.  *See id.* at 12.

     5.     Mr. Patton was assisted in his representation of McClellan by W. Penn Hackney ("Mr. Hackney") and Jay J. Finkelstein ("Mr. Finkelstein"), Assistant Federal Public Defenders, as well as Richard Villa ("Mr. Villa"), an investigator for the Federal Public Defender's Office.  Hrg. Tr. at 35, 39, 58.  Mr. Hackney attended the November 14, 2003 status conference and the sentencing hearing.  *See* Crim. Doc. Nos. 47 & 63.

     6.     Mr. Patton thoroughly researched McClellan's case and the potential arguments available to him prior to sentencing.  First, Mr. Patton obtained and reviewed Mr. Mariani's file.  Hrg. Tr. at 11.  Mr. Patton also met with McClellan after the Presentence Investigation Report ("PSI") was produced, but prior to sentencing, "to go over it with him to determine if we would file any objections."  Hrg. Tr. at 13; *see also id.* at 14.  Based on his review of the PSI, Mr. Patton did not believe "that there were any objections that could be filed to the calculation of the offense

---

[2]  Mr. Patton and Assistant Federal Public Defender W. Penn Hackney were present on behalf of McClellan.  McClellan did not attend this status conference.  Assistant United States Attorney Almon Burke was present on behalf of the Government.

[3]  Mr. Patton and Assistant Federal Public Defender W. Penn Hackney were present on behalf of McClellan.  McClellan was present at the second status conference which was conducted in open Court.  Assistant United States Attorney Almon Burke was present on behalf of the Government.

level and criminal history calculations under the [PSI]." *Id*. at 13-14.[4]

7. Mr. Patton obtained the records of McClellan's prior convictions and determined whether said convictions could be used to qualify McClellan for career offender status. Hrg. Tr. at 16, 18-19. Based upon his investigation, Mr. Patton concluded that "[t]he PSI correctly calculates Mr. McClellan's guideline imprisonment range as 151-188 months." Defendant's Position with Respect to Sentencing Factors at unnumbered 1 (*Crim. Doc. No. 41*). Mr. Patton also met with McClellan and discussed the application of the career offender guideline with him "on numerous occasions" prior to sentencing. Hrg. Tr. at 19.

8. United States Sentencing Guidelines § 4A1.3(b)(1) provides that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." Mr. Patton did not argue at sentencing that McClellan's prior criminal history overstated the seriousness of his criminal history.

9. Mr. Patton was well aware of the availability of a downward departure under section 4A1.3(b)(1), but "did not argue it because [he] did not feel ... that it would be something we could be successful on." Hrg. Tr. at 17. A review of the PSI confirms that such an argument would have been exceedingly weak at best, and frivolous at worst.

10. The PSI reflects that McClellan was adjudicated delinquent three times as a juvenile. *See* PSI at ¶¶ 24-26. At age 16, McClellan stabbed an individual on his side and hand with a butcher knife, which caused serious bodily injury. *Id.* at ¶ 24. Accordingly, McClellan was adjudicated delinquent. *Id*. At age 17, McClellan was found in possession of three bags of marijuana after having verbally attempted to terrorize the principal and vice principal of

---

[4] McClellan stated at the sentencing hearing that he was only able to discuss the PSI with Mr. Patton immediately prior to sentencing ("I reviewed it, but I just got to discuss it in here before you came out."). Sent. Hrg. Tr. at 5. McClellan testified at the hearing that he never discussed the PSI with Mr. Patton prior to the day of sentencing, and that prior to sentencing he had only met with Richard Villa, the investigator for the Federal Public Defender's Office, to discuss the PSI. Hrg. Tr. at 59-60. The Court credits Mr. Patton's testimony, and does not credit McClellan's testimony, regarding the review of the PSI prior to sentencing.

McKeesport High School. *Id.* at ¶ 25. As a result, he was again adjudicated delinquent and committed to The Academy. *Id*. While at The Academy, McClellan and an accomplice stole items of personal property from automobiles on two separate occasions. PSI at ¶ 26. He was again adjudicated delinquent. *Id.*

11. The PSI also reflects that McClellan did not stray from his criminal career path after becoming an adult. At age 19, McClellan was convicted of two counts of possession of a controlled substance, possession with intent to deliver, and two counts of disorderly conduct. *Id*. at ¶¶ 28-30. At age 21, McClellan was convicted of a multitude of felony narcotics offenses filed at three separate criminal cases. *Id*. at ¶ 32-34. The common denominator of the three cases was the repeated sale of heroin. *See id*. At age 28, McClellan was again convicted of disorderly conduct. *Id*. at ¶ 35. The PSI also reflects other criminal convictions and multiple arrests. PSI at ¶ 27, 37, 39-41.

12. McClellan's criminal history, taken as a whole, reflects that he was a long-time narcotics dealer who is prone to commit acts of violence. Mr. Patton's decision not to argue for a downward departure pursuant to USSG § 4A1.3(b)(1) was entirely sensible and reasonable under the circumstances. Indeed, based on McClellan's lengthy and serious criminal record, the argument that McClellan should receive a downward departure pursuant to USSG § 4A1.3(b)(1) would have had no reasonable basis in fact or law.

13. Mr. Patton also declined to argue at sentencing that the career offender guideline should not be applied to McClellan. The career offender guideline provides as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).

14. Mr. Patton did not, and indeed could not, challenge the accuracy of the PSI as to McClellan's prior criminal history at sentencing, and there is neither an allegation nor evidence that the PSI does not accurately reflect his criminal history. It is undisputed that McClellan has five prior felony convictions for controlled substance offenses. PSI at ¶ 28, 32-34, 36.

5

Additionally, McClellan was over 18 years old when he committed the felony controlled substance offense charged in Count II of the federal Indictment. Thus, all elements of career offender status under the Guidelines are obviously present. Mr. Patton clearly had no basis in fact or law to challenge McClellan's status as a career offender.

15. On December 4, 2003, McClellan was sentenced to a term of imprisonment of 162 months, to be followed by a term of supervised release of 3 years. *See* Sent. Hrg. Tr. at 9-10. McClellan's guideline range was 151 to 188 months, which was based on a criminal history category of 6 and a total offense level of 29. See PSI at ¶¶ 23, 38. McClellan did not receive the shortest possible sentence under the Guidelines, but nevertheless was sentenced below what could be called the "middle" of the Guidelines range.

16. Mr. Patton testified that after the sentencing hearing he discussed with McClellan whether an appeal should be filed. McClellan did not wish to appeal at that time, and he told Mr. Patton that he did not wish to appeal. Hrg. Tr. at 44, 53-55, 71-72, 76-77; Movant's Exh. 1. Mr. Patton testified at the § 2255 hearing that there was no basis to appeal because 1) due to the guilty plea, the issue of guilt could not be raised on appeal, 2) no appealable issues existed as to McClellan's offense level or criminal history category, and 3) the sentence was within the guideline range, and therefore the appropriateness of the Court's sentence would not be reviewed by the court of appeals. Hrg. Tr. at 54. Mr. Patton's testimony in that regard accurately summarizes the post-sentencing situation faced by McClellan.

17. McClellan testified that he did not know that he could appeal his sentence until he was placed with the Bureau of Prisons and conducted some legal research. Hrg. Tr. at 77-78, 81. The Court does not credit McClellan's testimony in that regard. McClellan's testimony is belied by the fact that he was fully informed of his right to appeal by the Court at the sentencing hearing. Hrg. Tr. at 90-92. Additionally, as stated above, Mr. Patton discussed McClellan's appellate rights with him after the sentencing hearing. Hrg. Tr. at 44, 53-55, 71-72, 76-77; Movant's Exh. 1. Finally, McClellan was well aware that he had appellate rights from his prior convictions in the state system, and he had actually appealed one of his numerous prior state court convictions. Hrg. Tr. at 83-84.

18.     McClellan testified that he decided that he wanted to appeal his conviction/sentence approximately eight to ten months after he was placed with the Federal Bureau of Prisons. Hrg. Tr. at 93.

CONCLUSIONS OF LAW

1.     In a proceeding under 28 U.S.C. § 2255, a petitioner bears the burden of proving that he or she is entitled to relief. *U.S. v. Davies*, 394 F.3d 182, 189-90 (3d Cir. 2005); *U.S. v. Nahodil*, 36 F.3d 323, 329 (3d Cir. 1994); *U.S. v. Hollis*, 569 F.2d 199, 205-06 (3d Cir. 1977).

2.     In *Strickland v. Washington, supra,* the United States Supreme Court set forth the "general" test for determining whether a criminal defendant was afforded his or her Sixth Amendment right to effective assistance of counsel. The *Strickland* court summarized its holding as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. *See also U.S. v. Davies*, *supra*.

3.     With respect to the "performance" prong of the test, the Strickland court observed that "the defendant must show that counsel's representation fell below an objective standard of reasonableness," that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms," and that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688.

4.     With respect to the "prejudice" prong of the test, a defendant must show that counsel's deficient performance "actually had an adverse affect on the defense." *Id.* at 693. The *Strickland* court provided further guidance with respect to the "prejudice" prong by holding that "[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

     5.     In *Roe v. Flores-Ortega, supra*., The United States Supreme Court considered the application of *Strickland v. Washington* to the situation in which counsel does not file a notice of appeal. Specifically, the Court considered the legal effect of failure to file a notice of appeal "when the defendant has not clearly conveyed his wishes one way or the other." *Flores-Ortega*, 528 U.S. at 477.[5] The Court described the proper inquiry into effectiveness of counsel under such circumstances as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning--advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel **has consulted** with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. ... If counsel **has not consulted** with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega*, 528 U.S. at 478 (emphasis added). *See also Lewis v. Johnson*, 359 F.3d 646, 654 (3d Cir. 2004).

     6.     The *Flores-Ortega* Court addressed the circumstances under which "counsel's failure to consult with the defendant itself constitutes deficient performance." The Court observed that "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal," but nevertheless declined to impose "a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id*. at 479-80. With respect to whether failure to consult is deficient performance, the Court held as follows:

---

[5] The Court had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477(*citing Rodriquez v. United States*, 395 U.S. 327 (1969)). The *Flores-Ortega* Court also observed that "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (*citing Jones v. Barnes*, 463 U.S. 745 (1983)).

> We ... hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. ... Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id*. at 480.

7.      To demonstrate the "actual prejudice" required by *Strickland,* "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega,* 528 U.S. at 484. The Court observed that "[i]f the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id*. The Court also stated that "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination," that "a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal," and that "a defendant's inability to 'specify the points he would raise were his right to appeal reinstated' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Id*. at 485-86.

8.      The Court finds and rules that Mr. Patton was not deficient in his preparation for the sentencing hearing, *i.e*., his preparation for the hearing did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The evidence of record reflects that Mr. Patton, as well as other representatives of the Federal Public Defender's Office, thoroughly researched and reviewed McClellan's case with him prior to sentencing. The evidence of record also reflects that Mr. Patton met with McClellan prior to the sentencing hearing and, at the very least, advised Mr.

9

McClellan of what to expect at the hearing.

9.     The Court finds and rules that Mr. Patton was not deficient in his failure to argue that McClellan was not a career offender pursuant to section 4B1.1 of the Guidelines. As stated above, Mr. Patton clearly had no basis in fact or law to challenge the application of USSG § 4B1.1 to McClellan. Moreover, even if Mr. Patton were deficient in failing to so argue, McClellan has not demonstrated actual prejudice because the argument surely would not have prevailed.

10.    The Court finds and rules that Mr. Patton was not deficient in his failure to argue that McClellan's criminal history category substantially over-represented the seriousness of his criminal history or the likelihood that he would commit other crimes. As stated above, Mr. Patton clearly had no reasonable basis in fact or law to argue that McClellan should receive a downward departure pursuant to USSG § 4A1.3(b)(1). Moreover, even if Mr. Patton were somehow deficient in failing to so argue, McClellan has not demonstrated actual prejudice because the failure to raise the issue had no adverse effect on McClellan's defense, *i.e.*, the argument would not have prevailed. *See Strickland*, 466 U.S. at 693.

11.    The Court finds and rules that McClellan has not demonstrated that Mr. Patton was deficient due to his failure to file a notice of appeal. The credible evidence of record reflects that Mr. Patton consulted with McClellan about an appeal and McClellan indicated that he did not wish to appeal. Under these circumstances Mr. Patton was clearly not deficient in failing to file a notice of appeal. *See Flores-Ortega*, 528 U.S. at 478 ("If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. ").

12.    Assuming, *arguendo*, that Mr. Patton did not consult with McClellan after sentencing about whether to appeal, McClellan has nevertheless failed to demonstrate that Mr. Patton's performance was deficient. Significantly, McClellan entered a plea of guilty to the charges, was apprised of his guidelines range prior to the sentencing proceeding, has not identified a non-frivolous ground for appeal, did not express his desire to appeal to Mr. Patton, and decided that he wanted to appeal approximately eight to ten months after he was placed with the Bureau of

Prisons. In addition, the Court specifically asked McClellan at the sentencing hearing whether he wanted the Clerk of Court to file an appeal on his behalf, to which he responded "no." Sent. Hrg. Tr. at 13. Under these circumstances there was no reason for Mr. Patton to have thought that either a rational defendant in McClellan's position would want to appeal, or that McClellan reasonably demonstrated that he was interested in appealing. *Flores-Ortega*, 528 U.S. at 480.

13. Assuming, *arguendo*, that Mr. Patton actually was deficient in failing to consult with McClellan about his appellate rights, the Court finds and rules that McClellan has not demonstrated the "actual prejudice" required by *Strickland* and *Flores-Ortega*. McClellan was well aware of his right to appeal at and immediately after sentencing, and he consciously decided to appeal his sentence approximately eight to ten months later, after having conducted some legal research while in prison. Under these circumstances McClellan has not demonstrated "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega,* 528 U.S. at 484. Instead, because McClellan did not want to appeal immediately after sentencing, and decided to appeal after many months of imprisonment, this is a situation where "counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id*.

14. Finally, McClellan contends in his Petition that "counsel was ineffective for failing to conduct an adequate pretrial investigation, that a reasonably competent attorney would have discovered the specific piece or body of evidence to alter the outcome of his plea arrangement, and length of incarceration." Petition at 5. Counsel did not introduce any evidence germane to this issue at the hearing. *See* Hrg. Tr. at 4-5. However, in his brief counsel for McClellan observes that "certain of the testimony at the hearing of June 23, 2005 may have implicated that issue with respect to either Mr. Mariani or Mr. Patton." Brief at 3 n.1.

15. The Court has thoroughly reviewed the record for any evidence to support the foregoing argument. The Court has found no evidence that either Mr. Mariani or Mr. Patton failed to conduct an adequate pretrial investigation or inappropriately advised McClellan regarding his guilty plea and/or his decision to maintain his guilty plea. Therefore, the Court finds and rules that McClellan has not demonstrated that Mr. Mariani and/or Mr. Patton were deficient in their

investigation of the charges against him.  The Court also finds and rules that McClellan has not demonstrated that said attorneys were deficient in their advice to McClellan regarding the entry of his guilty plea or his decision to maintain his guilty plea.

## CONCLUSION

For the reasons hereinabove stated, the Petition to Vacate, Set Aside or Correct Sentence filed by petitioner Frank Todd McClellan will be denied.  An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK TODD McCLELLAN**<br>a/k/a Frank Neeszy<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | )<br>)<br>)<br>)<br>)  **2:04cv1791**<br>)  **2:03cr5**<br>)<br>)<br>) |

**ORDER OF COURT**

AND NOW, this 14th day of November, 2005, upon consideration of petitioner Frank Todd McClellan's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*Document No. 48*), and after an evidentiary hearing followed by oral argument of counsel and Petitioner's Brief in Support of Petition to Vacate Sentence Pursuant to 28 U.S.C. § 2255, the Court enters the foregoing Findings of Fact and Conclusions of Law.

NOW THEREFORE, it is hereby **ORDERED**, **ADJUDGED, and DECREED** as follows:

1. Frank Todd McClellan's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*Document No. 48*) is **DENIED**;

2. A certificate of appealability is **DENIED** as Frank Todd McClellan has not made a substantial showing of a denial of a constitutional right; and

3. Judgment in favor of respondent United States of America will be entered and the Clerk shall docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Almon S. Burke, Jr., AUSA
Email: almon.burke@usdoj.gov

James W. Kraus, Esquire
Email: jkraus@psmn.com